**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ROBERT A. DAVENPORT and
MASAMI CAMP DAVENPORT,**

               **Plaintiffs,**

   v.                                      **1:05-cv-3047-WSD**

**FORD MOTOR COMPANY and
ROBERT HUTSON FORD
LINCOLN MERCURY, INC.,**

               **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Masami Davenport and Robert Davenport's ("Plaintiffs") Motion to Remand [7] and Motion for Leave to Amend Complaint [10].[1]

**I.    BACKGROUND**

This is an automotive products liability action which arises from an accident involving a 2000 Mercury Sable (the "vehicle") driven by Plaintiff Masami Davenport, manufactured by Ford Motor Company ("Ford") and sold as a new

---

[1] Plaintiff moved for leave to file a Sur-Reply Memorandum in Opposition to Plaintiffs' Motion for Remand [12]. Sur-Reply are not anticipated by the Court's local rules, but because the Motion is unopposed, it is GRANTED.

automobile to Plaintiffs by Robert Hutson Ford Lincoln Mercury, Inc. ("Hutson Dealership").  Plaintiffs allege that on October 2, 2003, Ms. Davenport was driving her vehicle when she collided with a 1997 Ford Mustang, which was traveling in her lane in the wrong direction.  During the collision, Ms. Davenport and her son, Nicholas Davenport, were adequately restrained by the passenger restraint system in the car.  Plaintiffs allege, however, that their daughter Kristen Davenport's passenger restraint system, including the seat upon which she was seated, failed when the cars crashed.  Plaintiffs claim that as a result of being "violently thrown about from the force of the impact and the failure of her passenger restraint system," Kristen Davenport died.  (Pl. Mot. to Remand, at 2.)  The seat bottom allegedly failed because a clip intended to secure it to the floor of the automobile was not in place.

On September 29, 2005, Plaintiffs filed this action in the State Court of Cobb County, Georgia.[2]  Plaintiffs asserted claims of strict liability and negligence against

---

[2] Plaintiffs also asserted claims against Darren Levon Smith and James Lewis.  Before this case was removed, Plaintiffs moved to "drop" both Mr. Lewis and Mr. Smith as defendants.  (Pl. Mot. to Drop Defendant Darren Levon Smith, attached as Ex. B to Notice of Removal [1]; Pl. Mot. to Drop Defendant James Lewis, attached as Ex. C to Notice of Removal.)

Defendant Ford. (Complaint, attached to Notice of Removal as Ex. A ("Compl."), at ¶¶ 12-17.) Plaintiffs asserted a claim for breach of warranty against Defendant Hutson Dealership and Ford. (Id. at ¶¶ 18-19.)

On November 30, 2005, Defendants filed a Joint Notice of Removal, asserting that diversity of citizenship exists between the properly joined parties. Defendants contend the Hutson Dealership, the only non-diverse defendant, was fraudulently joined to defeat federal jurisdiction. (Notice of Removal, at ¶ 15.) On August 8, 2005, Plaintiffs filed their motion to remand, claiming that complete diversity does not exist because Defendant Hutson Dealership and Plaintiff are both Georgia residents, and the Complaint states valid claims against the dealership.[3]

## II. DISCUSSION

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[i]f at any

---

[3] It is undisputed that Plaintiffs and Ford are diverse parties. It is also undisputed that Defendant Hutson Dealership is a Georgia corporation and that Plaintiffs are Georgia residents.

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Where the propriety of removal is in question, the burden is on the removing party to show removal is proper.  Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

Defendants claim this Court has diversity jurisdiction under 28 U.S.C. § 1332.  Section 1332 provides for "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Section 1332 further states that "[f]or the purposes of this section . . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."  Id. at § 1332(c)(1).  "Diversity jurisdiction, as a general rule, requires complete diversity -- every plaintiff must be diverse from every defendant."  Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1564 (11th Cir. 1994).

Plaintiff and Defendant Hutson Dealership are citizens of the State of Georgia.  (Notice of Removal ¶¶ 2-4.)  Defendants argue removal was proper, however, because Defendant Hutson Dealership was fraudulently joined.  (Id., at

¶ 15.)  If joinder of the Hutson Dealership is fraudulent, then diversity jurisdiction exists and removal was proper.  The question before the Court is whether the joinder of Defendant Hutson Dealership was fraudulent.  The Court finds that it was, and therefore this Court has jurisdiction over the parties.

    A.    <u>Fraudulent Joinder</u>

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998).  The removing party has a "heavy" burden of proving fraudulent joinder.  <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997).  "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either:  (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."  <u>Id.</u>  The Court must base its decision on the plaintiff's pleadings at the time of removal, but the Court may also consider affidavits submitted by the parties.  <u>Id.</u>  When determining whether the case should be remanded, the Court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of plaintiff.  <u>Id.</u>  "[A]fter drawing

all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Id. at 1541-42 (citation and quotation omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. at 1538 (quotation and citation omitted).

Plaintiffs claim that removal of this case was improper and that remand is required because Plaintiffs have stated a valid claim for breach of warranty against Defendant Hutson Dealership. Plaintiffs argue they state a valid claim for breach of warranty because circumstantial evidence strongly suggests that the retainer wire was detached manually prior to the collision. Defendants argue that the Hutson Dealership disclaimed any express or implied warranties when Plaintiff purchased the vehicle; therefore Plaintiffs cannot establish a cause of action against it, and the Dealership is fraudulently joined.

B.     Plaintiffs' Breach of Warranty Claim

The question for the Court is whether there is any possibility that Plaintiffs will be able to establish a breach of warranty claim against Hutson Dealership. If

-6-

the answer is yes, the Dealership is properly joined, and remand is proper.  An express warranty is contractual in nature and arises from specific statements or representations, either verbal or written, made by a seller concerning the quality or character of goods.  Stewart v. Gainesville Glass Co., Inc., 206 S.E.2d 857, 860 (Ga. Ct. App. 1974).  For an express warranty to be enforceable, the statement or representation must be made contemporaneously with and as part of the sale of the product.  Id.; Bell v. Menzies, 138 S.E.2d 731, 732 (Ga. Ct. App. 1964).  The buyer must allege that he relied upon the seller's statement or representation in order to establish a claim for breach of express warranty.  Moore v. Berry, 458 S.E.2d 879, 881 (Ga. Ct. App. 1995).

Plaintiffs signed a contract for the sale of the vehicle at the time of the purchase. The Bill of Sale, attached to Defendants' Opposition to the Motion for Remand, demonstrates that Defendant Hutson Dealership did not provide an express warranty.  (Bill of Sale, attached to Opp. to Mot. for Remand [8] as Ex. A.)  The Bill of Sale, provided by the Hutson Dealership to Plaintiffs at the time of purchase, states:

DISCLAIMER OF WARRANTY

> ANY WARRANTIES ON THE PRODUCTS SOLD HEREBY ARE THOSE MADE BY THE MANUFACTURER.  THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SAID PRODUCTS.

(Id.).  This language makes it clear that the Hutson Dealership disclaimed all warranties of any kind and that any warranties given were those of the manufacturer, Ford.  Because an express warranty requires specific written or verbal statements by the seller about the quality of the vehicle, and the dealership specifically disclaimed all warranties in the Bill of Sale, Plaintiffs cannot assert a breach of express warranty claim against the Hutson Dealership, the seller of the vehicle.

Plaintiffs also do not have a reasonable basis for their claim for breach of implied warranties of merchantability and fitness for a particular purpose against the Hutson Dealership.  Implied warranties arise by operation of law and can be disclaimed.  N. Ga. Ready Mix Concrete Co., Inc. v. L & L Const., Inc., 508

S.E.2d 722, 726 (Ga. Ct. App. 1998).  The Georgia Uniform Commercial Code sections addressing implied warranties of merchantability and implied warranties of fitness for a particular purpose specifically allow for their exclusion or modification.  See O.C.G.A. § 11-2-314(1) (stating that "*unless excluded or modified* (Code Section 11-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale . . . ."); O.C.G.A. § 11-2-315 (stating that "there is *unless excluded or modified* under Code Section 11-2-316 an implied warranty that the goods shall be fit for such purpose").  UCC Section 11-2-316 establishes the requirements for the content and appearance of a proper and effective disclaimer of implied warranties:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

O.C.G.A. § 11-2-316(2).  "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. . . . Whether a term or clause is 'conspicuous' or not is for decision by the court."  O.C.G.A. § 11-1-201(10).  "A printed heading in capitals . . . is conspicuous."  Id.

The disclaimer on the Bill of Sale meets these requirements. The disclaimer is capitalized and appears just above the place for Plaintiffs' signatures; therefore it is conspicuous. See Apex Supply Co. v. Benbow Industries, Inc., 376 S.E.2d 694, 697 (Ga. Ct. App. 1988).[4] It also specifically mentions the word "merchantability," and it is in writing. The disclaimer therefore meets all of the requirements under Georgia law to disclaim the implied warranties of merchantability and fitness for a particular purpose.[5] Because all express and implied warranties were properly

---

[4] Apex Supply Co. involved a suit for breach of implied warranties for defective piping in the construction of a greenhouse. The wholesaler and distributor argued that implied warranties had been effectively disclaimed by the contractor's sales invoices. Apex Supply Co., 376 S.E.2d at 695. The language on the face of the sales invoice, in bold face type and capital letters, stated: "ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXCLUDED." The Georgia Court of Appeals held that this language was conspicuous. Id. at 697. The court noted that the disclaimer language was capitalized, in a separate paragraph on the front of the invoice, and in a type style only used in the disclaimer, therefore the disclaimer was valid. Id. The disclaimer in Apex Supply Co. is very similar to the one at issue in this case–both are capitalized and appear under their own heading directly above the signature of the purchaser.

[5] Plaintiffs argue in their Reply Brief that the Bill of Sale has "numerous evidentiary shortcomings" because the Bill of Sale itself and Plaintiffs' signatures on it have never been authenticated. (Pl. Reply to Mot. to Remand [9], at 4.) Plaintiffs also argue that because the document references two automobiles, the 2000 Mercury Sable bought by Plaintiffs and a 1995 Isuzu Rodeo sold by the Plaintiffs to Defendant Hutson Dealership as a trade-in, the document could be

disclaimed, Plaintiffs cannot assert a claim for breach of warranty against the Hutson Dealership. The Dealership is therefore a fraudulently joined party, diversity jurisdiction exists, and remand is improper.

C.     Plaintiffs' Motion to Amend

Plaintiffs seek to amend their Complaint to add a claim of negligence against Defendant Hutson Dealership. They argue that even if they are unable to sustain a claim for breach of warranty, their amended complaint establishes a valid claim for negligence against the Hutson Dealership, thus curing any fraudulent joinder and making remand proper. Plaintiffs allege in their amended complaint that the Hutson Dealership, on at least one occasion, conducted an inspection of the vehicle which should have revealed the detachment of the rear passenger seat bottom from the floor of the automobile. Plaintiffs allege that the Dealership was negligent in conducting its inspection and allowing the vehicle to leave its control without either properly attaching the rear passenger seat bottom to the floor of the automobile or

---

interpreted as providing a disclaimer by the Plaintiffs regarding their trade-in vehicle rather than a disclaimer by Defendant Hutson Dealership. Plaintiffs, however, submit no affidavit testimony to support their argument that Plaintiffs did not actually sign the Bill of Sale or that they did not understand the language of the disclaimer on the Bill of Sale. These arguments are unconvincing, and the Bill of Sale shows that a valid disclaimer was given by Defendant Hutson Dealership.

warning Plaintiffs of the existence of the detachment.  (Pl. First Am. to Compl., attached to Pl. Mot. to Amend [10] as Ex. 1, at 1.)  Defendants argue that Plaintiffs cannot amend their complaint under Fed. R. Civ. P. 15(a) to defeat removal and that the Court is required to determine if jurisdiction existed at the time of removal.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  20 U.S.C. § 1447(c).[6]  The Eleventh Circuit has interpreted section 1447(c) to mean "the proper inquiry is . . . whether the court had jurisdiction *at the time of removal*."  Poore v. American-

---

[6] Plaintiffs rely on a facial reading of the wording of section 1447(c) in arguing the Court must remand an action at any time it appears that diversity jurisdiction no longer exists.  But section 1447(c) is qualified by the Eleventh Circuit's holding in Poore that, if at any time before final judgment, it appears that jurisdiction did not exist *at the time of removal* the case must be remanded.  That is, if the Court discovers at any point before entry of final judgment that jurisdiction did not exist when the case was removed, the Court must remand the case.  But jurisdiction is judged at the time of removal.  Poore, 218 F.3d at 1290 (noting that every circuit that has addressed the issue has held that jurisdiction should be judged at the time of removal and quoting the Sixth Circuit holding that "courts still read [section 1447(c)] as authorizing remand when a district court determines that jurisdiction had been lacking at the time of removal, rather than later").  The Supreme Court has stated in considering a different issue that "[a] case such as this one is more closely analogous to cases in which a *later* event, say the change in the citizenship of a party or a subsequent reduction of the amount at issue below jurisdictional levels, destroys previously existing jurisdiction.  In such cases, a federal court will *keep* a removed case."  Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 391 (1998).

Amicable Life Ins. Co., 218 F.3d 1287, 1290 (11th Cir. 2000) (emphasis added). The statute "prohibits courts from relying on post-removal events in examining subject matter jurisdiction." Id.

In Poore, the appellees filed a class action against the appellant, seeking compensatory and punitive damages against appellant for alleged fraudulent life insurance policies. Id. at 1289. In their complaint, the appellees claimed that the relief sought was less than $75,000 per class member. Id. On November 12, 1998, the appellant filed a Notice of Removal to federal court on the basis that diversity jurisdiction existed because the aggregate amount of punitive damages exceeded $75,000, and the amount in controversy requirement was met. Id. On November 25, 1998, the appellees filed a motion for leave to amend their complaint, deleting their claims for punitive damages and redefining the class to exclude those plaintiffs claiming more than $75,000 in damages or who wished to assert punitive damages claims. The district court granted the motion to amend on December 7, 1998. On December 15, 1998, the appellees filed a Motion to Remand, claiming the district court lacked subject matter jurisdiction because the amount in controversy requirement was no longer satisfied. The appellees argued that a 1988 amendment to section 1447(c) authorized the court to consider post-removal events in

determining whether it had subject matter jurisdiction. The district court remanded the case to state court, relying on the amended complaint to conclude jurisdiction no longer existed. The Eleventh Circuit reversed, finding that it was wrong for the district court to rely on the amended complaint to determine jurisdiction. Id. The proper inquiry was whether the amount in controversy was met at the time of removal. Id.

In so holding, the Poore court explained that "every Circuit that has addressed this issue has held that the proper inquiry is still whether the court had jurisdiction *at the time of removal*." Id. at 1290 (emphasis added). "That is, events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction," id. at 1291, and remand is authorized only "when . . . jurisdiction is lacking at the time of removal, rather than later."[7] Id. at 1290. The court held that because the

---

[7] Poore noted that "other post-removal events, however, may divest the district court of jurisdiction." Id. at 1291 n.2 (citing In re Merrimack Mut. Fire Ins. Co., 587 F.2d 642, 646 (5th Cir. 1978)). It cited only In re Merrimack, which noted in dicta that remand is proper if indispensable parties have not been joined, even if jurisdiction existed at the time of removal. Id. In that case, the plaintiff bank filed suit in Texas state court against the defendant insurance company for proceeds allegedly due it as mortgagee and loss payee under an insurance policy covering the home of the Cox family. The defendant removed the case to federal district court

appellee had amended the complaint after the case was removed, the district court erred in relying on the amended complaint to determine jurisdiction.[8] Id. at 1291; see also Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) (stating that "the jurisdictional facts that support removal must be judged at the time

---

on the basis of diversity. The defendant filed an answer and later moved for summary judgment. In response, the plaintiff filed an amended complaint, seeking to add as defendants a real estate agent and the original seller of the home who transferred his promissory note, with full recourse, over to the bank. Id. at 643-44. The plaintiff moved for remand to state court, arguing that the added individuals were indispensable parties and since they and the bank were Texas residents, their joinder would destroy complete diversity. The district judge granted the motion to remand. The defendant applied for writ of mandamus to compel the district judge to retain the case. In denying the writ, the Fifth Circuit did not reach the question of whether the added parties were indispensable but noted that if, in a removal case based on diversity of parties, the district court subsequently discovers that indispensable parties have not been joined, the district court should remand the case. Id. at 646. This exception for indispensable parties is sensible because "in diversity cases the question of indispensable parties is inherent in the issue of federal jurisdiction and . . . indispensable parties must be joined, sua sponte by the court if need be, even though to do so destroys complete diversity of citizenship of the parties and ousts federal courts of jurisdiction." Jett v. Zink, 362 F.2d 723, 726 (5th Cir. 1966). This Court is aware of no other exceptions to the general rule that the propriety of remand is determined by viewing jurisdiction at the time of removal. This case does not involve the joining of indispensable parties, therefore In re Merrimack does not apply, and this Court applies the general rule.

[8] The facts here are similar to those in Poore. Defendants removed this case to federal court based on diversity jurisdiction, and Plaintiffs now attempt to defeat diversity by adding a claim for negligence against Defendant Hutson Dealership in order to overcome their initial fraudulent joinder. Poore applies to the facts here.

-15-

of the removal"); Behlen v. Merrill Lynch, 311 F.3d 1087, 1095 (11th Cir. 2002) (stating that if a district court has subject matter jurisdiction over a diversity action at the time of removal, subsequent acts do not divest the court of its jurisdiction over the action); Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) (noting that "for purposes of this challenge to the subject matter jurisdiction of the district court, the critical time is the date of removal . . . [i]f jurisdiction was proper at that date, subsequent events, even the loss of the required amount in controversy, will not operate to divest the court of jurisdiction"); Brown v. East. States Corp., 181 F.2d 26, 27 (4th Cir. 1950) (holding that "the fact that plaintiff subsequently amended his complaint in an attempt to eliminate the federal question did not make remand proper" after the case was properly removed to federal court).

Poore requires that the Court determine if jurisdiction existed at the time of removal. At the time of removal in this case, Plaintiffs' only claim against resident defendant Hutson Dealership was for breach of warranty. That claim cannot be successful because Hutson Dealership waived all express and implied warranties. When Plaintiffs signed the Bill of Sale, they acknowledged the dealership's waiver of these warranties and that any warranties made to them were those of the

manufacturer. Because the Hutson Dealership was a fraudulently joined party at the time of removal, the parties who were not fraudulently joined were diverse, and the Defendants properly removed this case to federal court based on diversity jurisdiction. Diversity jurisdiction having existed at the time of removal, any subsequent amendment affecting the diversity of the parties will not divest this Court of jurisdiction. "It is well settled that the continued jurisdiction of a federal court after proper removal will not be allowed to be determined at the whim and caprice of the plaintiff by manipulation of the Complaint by amendment." Jacks v. The Torrington Co., 256 F. Supp. 282, 287 (D.S.C. 1966). The Court grants Plaintiffs' Motion to Amend because the Federal Rules require that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). The amendment requested should be allowed here. It does not, however, divest the Court of jurisdiction.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [7] is **DENIED**. Plaintiffs' Motion to Amend [10] is **GRANTED**.

**SO ORDERED**, this 19th day of July, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE