IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**ROBERT A. DAVENPORT and
MASAMI CAMP DAVENPORT,**

        **Plaintiffs,**

v.

**FORD MOTOR COMPANY and
ROBERT HUTSON FORD
LINCOLN MERCURY, INC.,**

        **Defendants.**

1:05-cv-3047-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Ford Motor Company ("Ford") and Robert Hutson Ford Lincoln Mercury, Inc.'s ("Hutson") Motion for Summary Judgment [34].

**I.     BACKGROUND**

On October 2, 2003, a 2000 Mercury Sable driven by Masami Camp Davenport ("Davenport") collided head-on with another vehicle.[1]  Davenport's daughter Kristen was seated in the right rear passenger seat of the Sable at the time of the accident.  Kristen Davenport died from a skull fracture sustained as a result

---

[1] It appears undisputed that the collision was primarily the fault of the other driver.

of the collision. Kristen Davenport also suffered internal injuries, but the record shows no evidence that these contributed to her death.[2] The record states, and plaintiffs concede, that the skull fracture alone was fatal.

On September 29, 2005, Davenport and her husband (collectively, "the Davenports") sued Ford and Hutson for Kristen Davenport's death in the State Court of Cobb County under theories of strict liability, negligence, and breach of

---

[2] According to the Local Rules of this District, a movant for summary judgment "shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." Local Rule 56.1.B

Defendants' statement of material fact fails to satisfy the Local Rules, including because it is conclusory to the point of being inadequate. Defendants do not, for example, state any facts relating to the scope or causes of Kristen Davenport's injuries or death. Defendants do not set forth any specific facts relating to the rear seat and seatbelt issues or how those issues relate to Kristen Davenport's injuries and death. In place of facts, Defendants assert inappropriate conclusions of law regarding the sufficiency of the evidence proffered by the Davenports. The pleading is improper.

As stated more fully below, the Court is required to dismiss part of the Davenport's claims on summary judgment. This ruling is compelled by the Davenport's own failure to state adequate facts in support of its brief, and should not be construed by Defendants as the Court accepting their arguments or their briefing practice.

warranty.  On November 30, 2005, Defendants removed the case to this Court.  On July 20, 2006, the Davenports filed their amended complaint.

The Davenports specifically claim that the right rear seat was not clipped into the floor of the Sable at the time of collision and that this defect caused Kristen Davenport to suffer internal injuries.  The Davenports also assert a design defect claim alleging that the rear seat-belt design allowed too much "spool" during frontal collisions, and that this excessive spool caused Kristen Davenport's skull fracture and death.  The Davenports allege that Ford had access to a "web-grabber" seat-belt design that would not have resulted in excessive "spool," but that Ford failed to use the web-grabber technology in the Sable's design.

The depositions of the Davenport's experts, upon which Defendants rely in support of their motion for summary judgment, conclude: (1) the right rear seat was not clipped into its retainer at the time of the collision; (2) there is no evidence concerning whether the seat was unclipped at the time it left Defendants' control; (3) there is no evidence to determine if anyone had unclipped the seat from its retainer prior to the collision; (4) the right rear seat belt was in use at the time of the collision; (5) the right rear seat belt spooled excessively during the collision;

and (6) the right rear seat belt was operating normally prior to the collision. (Lewis Dep., 17-23); (Hyatt Dep., 16-17, 55-56).

## II.   DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555,

1558 (11th Cir. 1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 127 S.Ct 1769, 1776 (2007).

  A. Rear Seat Claims

  The Davenports first claim that the right rear seat was not clipped properly into the Sable. Defendants primarily argue that the Davenports have not presented any evidence that the unclipped seat proximately caused Kristen Davenport's death.[3] Georgia's strict liability statute states:

---

[3] The Davenports rely on the doctrine of *res ipsa loquitur* to prove their claim regarding the rear right seat. See Doyle v. SRT Const. Specialty, Inc., 648 S.E.2d 664, 666 (Ga. Ct. App. 2007) (holding that the elements of *res ipsa* are: "(1) the injury ordinarily would not occur in the absence of negligence; (2) the injury was caused by an agent or instrument within the defendant's exclusive control; and (3) the injury was not due to any voluntary action or contribution on plaintiff's part . . . ."). The elements of *res ipsa loquitur* are not met here because the Davenports have not presented any evidence that Kristen Davenport's fatal skull injury was caused by the unclipped rear seat.

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold *is the proximate cause of the injury sustained*.

O.C.G.A. § 51-1-11(b)(1) (emphasis added).

Negligence requires similar proof of proximate causation between the defect and the injury. <u>Havlilovic v. Penske Truck Leasing</u>, 651 S.E.2d 160, 162 (Ga. Ct. App. 2007) (holding that elements of negligence are duty, breach, *proximate cause*, and damages).

The Davenports have, throughout their briefing on this motion, consistently construed their claim as one for wrongful death only.[4] O.C.G.A. § 19-7-1 provides for the right of recovery by parents for the wrongful death of a child. Section 19-7-1(c)(4) states, "full value of the life shall have the meaning given them in Chapter 4 of Title 51." O.C.G.A. § 54-4-1 states that "full value of the life" means "the full value of the life of the decedent without deducting for any of the necessary or

---

[4] Although the complaint and amended complaint are not clear on this issue, the Court accepts the Davenports consistent characterization of this action as one for wrongful death only. Because they have relied in their briefing exclusively on a wrongful death claim, the Court considers any other claims to be abandoned.

personal expenses of the decedent had he lived.  Wrongful death damages do not include damages for pain and suffering, which are appropriately pursued in a survival action.  See, e.g., Blackstone v. Blackstone, 639 S.E.2d 369, 372 n.5 (2006) ("A wrongful death action for the death of a child . . . is separate and distinct from a survival action for pain and suffering . . . .").

The Davenports admit that the unclipped rear seat did not contribute to Kristen Davenport's fatal skull fracture.  The record does not contain any evidence, and the Davenports do not argue, that Kristen Davenport's internal injuries caused her death.  There is no evidence in the record showing proximate causation between the unclipped rear seat and Kristen Davenport's death.  The Davenports have not asserted a survival action for pain and suffering.  Suffering and  summary judgment on the rear seat claims is granted.

B. Seat Belt

The Davenports also assert a design defect claim relating to the right rear seat belt.  Defendants argue that "plaintiffs have insufficient evidence to prove the prima facie elements of their product liability claims."

Georgia courts examine design defect claims under a "risk-utility analysis." Banks v. ICI Americas, Inc., 450 S.E.2d 671, 674 (Ga. 1994).  The risk-utility

analysis is one of "reasonableness, i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk." Id. at 673. Under the risk-utility test, "no finite set of factors can be considered comprehensive or applicable under every factual circumstance . . . ." Id. at 674. One "integral" factor "is the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." Id.

    Defendants argue that the Davenports have failed to present evidence on each of the possible general factors enumerated by the court in Banks. That list of factors, however, is merely illustrative. Banks, 450 S.E.2d at 675 n.6. "The 'heart' of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one." Jones v. NordicTrack, Inc., 550 S.E.2d 101, 103 (Ga. 2001).

    The Davenports have provided expert testimony stating: (1) the seat belt system in the Sable, working as designed, was prone to allow excessive "spool"; (2) excessive spool proximately caused Kristen Davenport's fatal skull fracture;

and (3) at the time of the Sable's manufacture, Ford knew of a safer alternative "web grabber" seat belt design, but elected not to use it.[5]

---

[5] Defendants attack the admissibility of Plaintiffs' expert opinions with motions in limine. Defendants' primarily attack Paul Lewis's ("Lewis") conclusion that the seatbelt "spooled" excessively. Defendants argue that Lewis formed his conclusions based on measurements taken when he buckled himself into a different model of car, and that this rough test is not sufficiently reliable to be admissible as evidence. Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993). Defendants argue that a surrogate test using a subject of similar height and weight to Kristen Davenport is necessary to satisfy the standards of reliability for the admission of scientific evidence set forth in Daubert.
    The Davenports admit that Lewis had not conducted a surrogate test at the time of his deposition. Lewis stated at his deposition that he would not be able to conduct a surrogate test until the seat belt assembly was removed from the Davenport's car. On July 6, 2007, after his deposition, the seat belt assembly was removed and Lewis conducted a surrogate study. In the surrogate study, Lewis based his measurements on an eleven year old girl of similar height and weight to Kristen Davenport, buckled into a 2001 Mercury Sable. The surrogate test found 7.5 inches of spool in Kristen Davenport's seatbelt. With that degree of spool, the surrogate's head was able to come into contact with the belt trim area of the car. Defendants appear to admit that this surrogate test satisfies Daubert. Lewis's conclusions from the surrogate test create issues of fact on the existence of excessive spool and on its proximate causation to Kristen Davenport's death.
    On the issue of available design alternatives, there is no dispute that "web grabber" technology would spool less and that the technology was available to Ford at the time it designed the 2001 Sable. The admissibility of the Davenports' proposed expert testimony on that issue is thus not necessary for the Court to conclude that an issue of fact exists.
    To the extent that Defendants' motions in limine raise issues not pertinent to the Court's summary judgment conclusions, such as, for example, whether Jeffrey Hyatt is qualified to testify as an expert, the Court reserves ruling until a time closer to trial.

The Davenports have raised a genuine issue of fact regarding the reasonableness of Ford's seat-belt design choice. Summary judgment on these claims is not appropriate.

C.   Breach of Warranty Claims

Georgia law prohibits recovery for wrongful death under a theory of breach of warranty. It is well settled that "[a] wrongful death action may not be predicated on a breach of warranty arising from the sale of goods, except specified articles intended for human consumption or use." Ryals v. Billy Poppell, Inc., 386 S.E.2d 513, 514 (Ga. Ct. App. 1989). See also, 14 Ga. Jur. Personal Injury and Torts § 25.8 (2007). Automobile seats and seatbelts are not included in the category of "specified articles intended for human consumption or use." See, Lovett v. Emory Univ. Inc., 156 S.E.2d 923 (Ga. Ct. App. 1967). See also, O.C.G.A. §§ 51-1-23, 51-1-24.

The Davenports do not seek damages for Kristen Davenport's non-fatal injuries under their warranty claims.[6] They argue only that they can pursue

---

[6] The Davenports argue that they "are entitled to recover for the wrongful death of their daughter under a theory of beach of express and implied warranties." (Pls. Resp. at 8.) The Davenports do not argue that they are entitled to damages for non-fatal injuries suffered by Kristen Davenport. As stated more fully above, the Court concludes that the Davenports seek only damages for wrongful death.

wrongful death damages under their breach of warranty theory.  The Davenports argue that Georgia cases prohibiting wrongful death recovery on breach of warranty claims should be deemed overruled by Banks, 450 S.E.2d at 671, because Banks overruled Mann v. Coast Catamaran Corp., 326 S.E.2d 436 (Ga. 1985) and Center Chemical Co. v. Parzini, 218 S.E.2d 580 (Ga. 1975).  The Davenports claim that the rule prohibiting wrongful death recovery under a breach of warranty claim relies upon these two cases.

When proceeding in diversity, this Court construes and applies state law.  Here, the Court must construe and apply the laws of Georgia.  When, as here, there is an  absence of precedent directly on point from a state court, the Court must decide what the state courts would hold.  Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1326 n. 5 (11th Cir. 2005).

Banks established a new rule for design defect cases.  Banks specifically held that design defect cases are different than manufacturing and packaging defect cases.  This holding overruled Mann and Parzini to the limited extent that those cases applied one standard to all products liability cases, including design defect cases.  Banks, 450 S.E.2d 671, 673 ("Because neither Parzini nor Mann addresses the appropriate test for reaching the legal conclusion that a product's design

specifications were partly or totally defective, we hold that the analysis therein will henceforth not be utilized in products liability design defect cases."). Banks did not mention breach of warranty claims. It reasoned only that design defect claims should be analyzed under the "risk-utility" doctrine while other products liability claims should be examined under the Parzini standard. Banks does not suggest that Georgia intended to change its common law rule prohibiting wrongful death damages under theories of breach of warranty in the sale of goods. The Court concludes that the Georgia Supreme Court did not, in Banks, intend to overturn well-settled Georgia law prohibiting wrongful death actions based on breach of warranty claims. Summary judgment on this claim is appropriate.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [34] is **GRANTED IN PART** and **DENIED IN PART**. The Davenport's claims pertaining to the unclipped rear seat and their breach of warranty claims are **DISMISSED**.

**SO ORDERED** this 11th of December, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE